UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

**Davi Schwartzbaum & Salvacion Schwartzbaum,**

                                    **Plaintiffs,**

                        *- against -*

**Emigrant Mortgage Company,**

                                    **Defendant.**

---

**09 Civ. 3848 (SCR)(LMS)**

**REPORT &
RECOMMENDATION**

**TO:  THE HONORABLE STEPHEN C. ROBINSON, U.S.D.J.**

Plaintiffs Davi and Salvacion Schwartzbaum bring this action against Defendant

Emigrant Mortgage Company, asserting federal claims for violations of the Truth in Lending Act

("TILA") and the Home Equity Protection Act ("HOEPA"), as well as state law claims of

unconscionability, breach of contract, breach of implied contract, unjust enrichment, breach of

the duty of good faith and fair dealing, deceptive practices under N.Y. Gen. Bus. Law § 349,

usury, and an injunction to expunge negative credit reports, all in connection with a home loan

transaction.  See Complaint, Docket # 1.  Defendant moves to dismiss the action pursuant to Fed.

R. Civ. P. 12(b)(6) for failure to state a claim.  Docket # 4.  For the reasons that follow, I

conclude, and respectfully recommend that Your Honor should conclude, that Defendant's

motion should be granted in part and denied in part.

## BACKGROUND

The following facts are taken from Plaintiffs' Complaint, which the Court accepts as true

for purposes of this motion.

Plaintiffs own a house in Nanuet, New York.  Compl. ¶¶ 1, 13.  On February 13, 2008,

they entered into a loan agreement with Defendant pursuant to which Defendant retained an

interest in their house.  Id. ¶¶ 1, 15.  The loan, which was in the amount of $180,000, was a refinance of another loan, and the proceeds were to be used to make repairs to the house.  Id. ¶ 16.  Defendant prepared all of the loan documents, and Plaintiffs were not given the opportunity to negotiate any of the terms of the loan.  Id. ¶ 17.  The Note and attached riders contained onerous default provisions of which Plaintiffs had not been apprised prior to closing.  Id. ¶ 20.[1] When Plaintiffs originally applied for the loan, they had been told that the interest rate of 11.65% would be fixed for 30 years.  Id. ¶ 21.  However, at the closing, Plaintiffs found out that it was an adjustable rate mortgage, or ARM.  Id. ¶ 22.  Because Plaintiffs were "in desperate need of money to repair their house, and were assured that they would be able to refinance into a more affordable loan in the near future," they nonetheless proceeded to close on the loan.  Id.  Due to unfinished repairs, the house was worth less than fair market value, and therefore, in order to insure that the repairs were made, at the closing, Defendant escrowed $38,000 of the loan money. Id. ¶ 23.  Plaintiffs did not know that this money was being held in escrow, and thus they did not know how to secure the $38,000 after repairs to their house were completed.  Id. ¶ 24.  Plaintiffs, who were unrepresented at the closing, signed the loan documents presented to them at the direction of Defendant's closing agent.  Id. ¶ 26.  Defendant failed to provide the notice of right to cancel required by TILA and HOEPA.  Id. ¶ 27.

Payments first became due under the Note in April, 2008.  Id. ¶ 30.  By October, 2008, Plaintiffs became unable to make their monthly payments.  Id. ¶ 31.  In November, 2008 (the Complaint states 2009, but this is clearly a typographical error), Defendant notified Plaintiffs that

---

[1]The Complaint states that a copy of the Note, as well as other documents referenced therein, comprise Exhibits A-D of the Complaint and will be filed, see Compl. ¶¶ 19-20, 34, 37; however, no such documents have ever been filed with the Court.

it was accelerating the payment schedule on the Note to the defaulting interest rate of 18%.  Id. ¶ 34.  Defendant knew that by accelerating the debt and increasing the interest rate on the Note to 18%, Plaintiffs would not be able to make their payments and the house would be placed in foreclosure and sold.  Id. ¶ 35.  Due to Defendant's failure to disclose adequately the terms and meaning of the escrow agreement, money that would have prevented the default was wrongfully withheld from Plaintiffs.  Id. ¶ 36.  Defendant has brought a foreclosure action against Plaintiffs in state court.  Id. ¶ 37.  Plaintiffs allege that the default interest rate imposed by the Note's Default Interest Rider is arbitrary and designed to increase indebtedness quickly and unfairly, thereby penalizing Plaintiffs.  Id. ¶ 39.  Plaintiffs allege that the amount demanded under the Default Interest Rider is unconscionable in light of Defendant's "cost of funds and the lending rates in the current interest rate climate."  Id.  Plaintiffs allege that since the Default Interest Rider "has no reasonable relationship to the costs associated with late payment of plaintiffs' monthly mortgage obligations," it is punitive.  Id. ¶ 40.

Plaintiffs' first claim is based on TILA and asserts violations of the disclosure requirements set forth in TILA and implementing Regulation Z.  Id. ¶ 43.  Plaintiffs allege that as a result of these violations they possess an extended right to rescind the loan and seek declaratory and injunctive relief in the form of rescission.  Id. ¶¶ 44-46.  Plaintiffs' second claim is based on HOEPA and likewise asserts violations of the disclosure requirements set forth therein.  Id. ¶ 54.  Once again, Plaintiffs claim a right to rescind the loan and seek declaratory and injunctive relief in the form of rescission, as well as statutory and actual damages.  Id. ¶¶ 50, 55-57.  Plaintiffs additionally assert a claim under state law for a declaration that the Default Interest Rider is unconscionable and, therefore, unenforceable.  Id. ¶¶ 59-60.  They assert a state law breach of

contract claim, alleging that Defendant breached paragraph 6 of the Note, pursuant to which the

parties agreed that "if any interest or loan charges collected or to be collected in connection with

the Note exceeded maximum loan charges set by any law, then such interest or loan charges

would be reduced by the amount necessary to comply with such limits and all sums collected

and/or attempted to be collected by Emigrant Mortgage in excess of such limits would be

returned to plaintiff [sic] or offset against the principal owed to Emigrant under the Note."  Id. ¶

62.  Thus, Defendant breached the parties' contract by charging "an excessive or unconscionable

amount of interest, including unenforceable and excessive penalties, upon any default" by

Plaintiffs.  Id. ¶¶ 63-65.

Plaintiffs likewise assert that Defendant breached the parties' implied contract that

Defendant would not charge Plaintiffs an excessive or unconscionable amount of interest.  Id. ¶¶

67-69.  Furthermore, Plaintiffs assert a claim for unjust enrichment, alleging that because of the

"exorbitant, usurious, illegal and unconscionable rate of interest and late payment penalties,"

Plaintiffs "stand to pay thousands of dollars for interest and/or late penalties that are enormously

inflated," and that therefore, Defendant "should be disgorged of any interest/fees" to which it is

not entitled.  Id. ¶¶ 71-72.  Plaintiffs assert a claim for Defendant's breach of its duty of good

faith and fair dealing in the performance of its contract – either express or implied – with

Plaintiffs.  Id. ¶¶ 74-77.  Plaintiffs further allege that Defendant has violated New York Gen.

Bus. Law § 349, asserting that Defendant engaged in deceptive acts and practices in its dealings

with Plaintiffs in connection with this loan.  Id. ¶ 80.  Plaintiffs assert a claim of usury based on

the loan's 18% default interest rate.  Id. ¶¶ 86-87.  Finally, Plaintiffs allege that but for

Defendant's failure to disclose the terms and conditions of the escrow agreement, they would

never have defaulted on the Note, and the foreclosure action would never occurred, as the result

of which their credit scores have been negatively affected.  Id. ¶¶ 90-92.  Therefore, Plaintiffs

seek an injunction directing Defendant to withdraw all negative credit reports resulting from

Plaintiffs' default on the Note.  Id. ¶ 94.

## DISCUSSION

### I.   Standard for Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires the complaint to set forth a "short and

plain statement of the claim showing that the pleader is entitled to relief."  Ashcroft v. Iqbal, 129

S. Ct. 1937, 1949 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  The complaint must include

something more than "an unadorned, the-defendant-unlawfully harmed-me accusation."  Id.

When considering a defendant's Rule 12(b)(6) motion to dismiss, "a judge must accept as

true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94

(2004) (citations omitted), and must draw all inferences from those allegations in the plaintiff's

favor.  Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).  However, a court is

not required to accept as true legal conclusions, and "[t]hreadbare recitals of a cause of action,

supported by mere conclusory statements, do not suffice."  Iqbal, 129 S. Ct. at 1949.

Previously, a Rule 12(b)(6) motion to dismiss  would not be granted unless "it appeared

beyond doubt that the plaintiff [could] prove no set of facts in support of his [or her] claim which

would entitle him [or her] to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  However,

the Supreme Court has explained that "Conley's 'no set of facts' language has been questioned,

criticized, and explained away long enough," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 562

(2007), since a literal reading of it would enable a conclusory statement of claim to survive a

motion to dismiss "whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." Id. at 561.  Instead, to survive a motion to dismiss, a complaint must set forth sufficient facts to "state a claim to relief that is plausible on its face." Iqbal, 129 S. Ct. at 1949 (internal quotation marks and citation omitted). A claim is facially plausible when the complaint contains enough facts to allow the court to reasonably infer that the defendant is liable for the alleged misconduct.  Id.  Put another way, a plaintiff must set forth enough facts to "nudge [his or her] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

In deciding a motion to dismiss under Rule 12(b)(6), the court may also consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, matters of which judicial notice may be taken, and documents possessed by, or known to, the plaintiff, and upon which the plaintiff relied in bringing suit.  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007); see also Schnall v. Marine Midland Bank, 225 F.3d 263, 266 (2d Cir. 2000) (court may consider documents which are integral to the complaint and of which plaintiff had notice).  However, "when matters outside the pleadings are presented in response to a 12(b)(6) motion, a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material. . . . Thus, a district court errs when it consider[s] affidavits and exhibits . . . or relies on factual allegations contained in legal briefs or memoranda, in ruling on a 12(b)(6) motion to dismiss."  Friedl v. City of New York, 210 F.3d 79, 83-84 (2d Cir. 2000) (internal quotation marks and citations omitted).

**II.**      **Sufficiency of Plaintiffs' Claims**

   **A.**      **Claim under TILA (First Cause of Action)**

Plaintiffs seek to exercise their extended right to rescind the loan which, they allege, is

based on Defendant's failure to provide both the Notice of Right to Cancel and other material

disclosures required by TILA.  Compl. ¶¶ 43-44.  Defendant attaches to its motion papers copies

of the Notice of Right to Cancel (Affidavit in Support Ex. E) and Truth in Lending Disclosure

(Affidavit in Support Ex. A), both of which were signed by Plaintiffs.[2]  Under TILA, "in the case

of any consumer credit transaction . . . in which a security interest, including any such interest

arising by operation of law, is or will be retained or acquired in any property which is used as the

principal dwelling of the person to whom credit is extended, the obligor shall have the right to

rescind the transaction until midnight of the third business day following the consummation of

the transaction or the delivery of the information and rescission forms required under this section

together with a statement containing the material disclosures required under this subchapter,

whichever is later . . . ."  15 U.S.C. § 1635(a).  Moreover, "[a]n obligor's right of rescission shall

expire three years after the date of consummation of the transaction or upon the sale of the

property, whichever occurs first, notwithstanding the fact that the information and forms required

under this section or any other disclosures required under this part have not been delivered to the

obligor . . . ."  15 U.S.C. § 1635(f); see also 12 C.F.R. § 226.23(a)(3) ("The consumer may

exercise the right to rescind until midnight of the third business day following consummation,

delivery of the notice required by paragraph (b) of this section, or delivery of all material

---

[2]The documents attached to Defendant's Affidavit in Support are properly before the
Court on this motion to dismiss under the standard set forth in Section I., supra.

disclosures, whichever occurs last.  If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. . . .") (footnote omitted).

TILA further provides that "[n]otwithstanding any rule of evidence, written acknowledgment of receipt of any disclosures required under this subchapter by a person to whom information, forms, and a statement is required to be given pursuant to this section does no more than create a rebuttable presumption of delivery thereof."  15 U.S.C. § 1635(c).  While Defendant cites case law to support its claim that Plaintiffs "have not made sufficient factual allegations to rebut the presumption," Memorandum of Law in Support (Docket # 6) at 11, none of those cases was decided in the context of a motion to dismiss, which requires the Court to accept the allegations in Plaintiffs' Complaint as true.[3]  Therefore, I conclude, and respectfully recommend that Your Honor should conclude, that Defendant's motion to dismiss Plaintiffs' claim of rescission under TILA should be DENIED.[4]  See Glucksman v. First Franklin Fin. Corp., 601 F. Supp. 2d 511, 514-15 (E.D.N.Y. 2009) (denying motion to dismiss TILA claim of ongoing rescission based on failure to receive two copies of Notice of Right to Cancel: "Regardless of the evidentiary showing necessary to overcome the presumption of delivery, . . . the sufficiency of the Glucksmans' evidence is not relevant on a motion to dismiss.").

---

[3]Likewise, while Defendant relies on Plaintiffs' affidavit in seeking dismissal of this claim, see Memorandum of Law in Reply at 7-8 nn.3-5, that document is not properly considered by the Court in deciding a Rule 12(b)(6) motion.

[4]Because I recommend that Plaintiffs should be allowed to proceed on their claim for an extended right of rescission under TILA based on their allegations concerning the Notice of Right to Cancel, I do not reach the other issues raised by Defendant with respect to this claim.

**B.**     **Claim under HOEPA (Second Cause of Action)**

Defendant advances two challenges to Plaintiffs' claim for violations of HOEPA based on, among other things, Defendant's failure to provide various disclosures required by the statute.

First, Defendant argues that to the extent that Plaintiffs seek monetary damages under HOEPA, their claim is time-barred.  TILA has a one-year statute of limitations as set forth at 15 U.S.C. § 1640(e).  "Case law supports the notion that the statute of limitations for TILA claims does not start running upon the discovery of the non-disclosure, but, rather, upon the funding of the loan."  Johnson v. Scala, No. 05 Civ. 5529, 2007 U.S. Dist. LEXIS 73442, at *10 (S.D.N.Y. Oct. 1, 2007) (citations omitted).  "HOEPA, 15 U.S.C. §§ 1602(aa), 1639, is part of TILA, and as such, is barred by the same statute of limitations" as TILA.  Id. at *12.  The Complaint in this action was filed on April 16, 2009, while Plaintiffs' loan was funded more than a year earlier, on February 19, 2008.  See Affidavit in Support Ex. G (settlement date was 2/19/08).  Therefore, I conclude, and respectfully recommend that Your Honor should conclude, that Defendant's motion to dismiss Plaintiffs' HOEPA claim, insofar as it seeks monetary damages, should be GRANTED.

Second, Defendant contends that Plaintiffs' loan is not subject to HOEPA.  HOEPA applies to a loan where *either* (1) "the annual percentage rate at consummation of the transaction will exceed by more than 10 percentage points the yield on Treasury securities having comparable periods of maturity on the fifteenth day of the month immediately preceding the month in which the application for the extension of credit is received by the creditor," 15 U.S.C.

§ 1602(aa)(1)(A),[5] *or* (2) "the total points and fees payable by the consumer at or before closing

will exceed the greater of – (i) 8 percent of the total loan amount; or (ii) $400."  15 U.S.C. §

1602(aa)(1)(B).  In this case, Plaintiffs allege that their loan is covered by HOEPA both because

it is a "high-interest" loan and because the total points and fees exceeded 8% of the loan amount,

citing 15 U.S.C. § 1602(aa)(1)(B)(i).  <u>See</u> Compl. ¶¶ 49, 52.[6]

>   Under the applicable regulations, "points and fees" are defined as:
>
>   (i) All items required to be disclosed under § 226.4(a) and 226.4(b), except
>   interest or the time-price differential; (ii) [a]ll compensation paid to
>   mortgage brokers; (iii) [a]ll items listed in § 226.4(c)(7) (other than
>   amounts held for future payment of taxes) unless the charge is reasonable,
>   the creditor receives no direct or indirect compensation in connection with
>   the charge, and the charge is not paid to an affiliate of the creditor; and (iv)
>   [p]remiums or other charges for credit life, accident, health, or loss-of-
>   income insurance, or debt-cancellation coverage (whether or not the debt-
>   cancellation coverage is insurance under applicable law) that provides for
>   cancellation of all or part of the consumer's liability in the event of the loss
>   of life, health, or income or in the case of accident, written in connection
>   with the credit transaction.

12 C.F.R. § 226.32(b)(1).  Section 226.4 deals with finance charges.  The Court notes that under

this regulatory scheme, the calculation of points and fees is a very technical and complicated

task.

>   In its motion papers, Defendant refers to the HUD-1 Settlement Statement for Plaintiffs'

---

[5]According to the regulations, a "high rate" mortgage is one where "[t]he annual percentage rate at consummation will exceed by more than 8 percentage points for first-lien loans, or by more than 10 percentage points for subordinate-lien loans, the yield on Treasury securities having comparable periods of maturity to the loan maturity as of the fifteenth day of the month immediately preceding the month in which the application for the extension of credit is received by the creditor."  12 C.F.R. § 226.32(a)(1)(i).

[6]Because, as explained herein, I recommend that Defendant's motion be denied based on its calculations concerning the total points and fees, I do not address whether Plaintiffs' loan qualifies as a "high interest" or "high rate" loan as defined in the statute and regulations.

loan, Affidavit in Support Ex. G, and simply states that the points and fees for Plaintiffs' loan

total $7,904.66, "which is the amount of settlement charges paid by Plaintiffs[7] less the charges

that are not considered 'points and fees.' "  Memorandum of Law in Support at 7.  Defendant then

goes on to provide a laundry list of settlement charges that it claims are excluded from the

calculation of points and fees "according to the statute" without further explanation of how those

amounts correspond to statutory or regulatory exclusions.

    Likewise, with respect to the "total loan amount," Defendant provides a cursory citation

to the regulations governing the calculation of the total loan amount, see id. at 8 (citing

Supplement I to 12 C.F.R. 226.32(a)(1)(ii)[8]), and then skips right to the conclusion that the "total

loan amount" is $173,653.11, again without explanation.  Id.  The Court is left to figure out how

Defendant determined that $6,346.89 should be deducted from the $180,000 principal loan

amount in calculating the total loan amount.

    While Plaintiffs have not disputed or opposed Defendant's calculations, given their

confusing nature and Defendant's failure to adequately explain how its calculations correspond to

the specific regulatory provisions in question, the Court cannot assess the validity of Defendant's

claim that Plaintiffs' loan is not covered by HOEPA.  Therefore, I conclude, and respectfully

recommend that Your Honor should conclude, that Defendant's motion to dismiss Plaintiffs'

claim for violations of HOEPA, on the ground that their loan is not subject to the statute, should

---

    [7]The total amount of settlement charges listed on the Settlement Statement is $14,312.77.
See Affidavit in Support Ex. G.

    [8]That Official Staff Interpretation states, "For purposes of the 'points and fees' test, the
total loan amount is calculated by taking the amount financed, as determined according to §
226.18(b), and deducting any cost listed in § 226.32(b)(1)(iii) and § 226.32(b)(1)(iv) that is both
included as points and fees under § 226.32(b)(1) and financed by the creditor."

be DENIED without prejudice to renew.[9]

**C.     State Law Claims**

    **1.     Unconscionability, Breach of Contract, Breach of Implied Contract, Unjust Enrichment, Breach of the Duty of Good Faith and Fair Dealing, and Usury (Third, Fourth, Fifth, Sixth, Seventh, and Ninth Causes of Action)**

Plaintiffs allege that the Default Interest Rider which is a part of their loan agreement is unconscionable, and they seek a declaration that the Default Interest Rider is unenforceable and void as a matter of law.  Compl. ¶¶ 59-60.  "An unconscionable contract has been defined as one which is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforcible according to its literal terms."  Gillman v. Chase Manhattan Bank, N.A., 73 N.Y.2d 1, 10 (1988) (internal quotation marks and citations omitted).  "A determination of unconscionability generally requires a showing that the contract was both procedurally and substantively unconscionable when made – i.e., some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party."  Id. (internal quotation marks and citations omitted).  "The procedural element of unconscionability requires an examination of the contract formation process and the alleged lack of meaningful choice.  The focus is on such matters as the size and commercial setting of the transaction, whether deceptive or high-pressured tactics were employed, the use of fine print in the contract, the experience and education of the party claiming unconscionability, and whether there was disparity in bargaining power."  Id. at 10-11 (citations

---

[9]I hereby recommend that Defendant clarify the record concerning the applicability of HOEPA to Plaintiffs' loan in any objections that it might file in response to this Report and Recommendation.

omitted).  With respect to substantive unconscionability, "[t]his question entails an analysis of the substance of the bargain to determine whether the terms were unreasonably favorable to the party against whom unconscionability is urged."  Id. at 12 (citation omitted).

Defendant attacks Plaintiffs' claim of unconscionability, as well as their claims for breach of contract, breach of implied contract, unjust enrichment, breach of the duty of good faith and fair dealing, and usury all on the same basis, citing case law that states that the imposition of higher interest rates upon default is neither unconscionable, usurious, nor a penalty.  However, none of the cases cited by Defendant involved the type of claims or the type of transaction at issue in this case, i.e., a loan contract between unsophisticated individual borrowers and a corporate lender secured by a mortgage on the borrowers' home.[10]  For their part, Plaintiffs rely almost exclusively on the case of Lieberman v. Emigrant Mortgage Co., 436 F. Supp. 2d 357 (D. Conn. 2006), in opposing Defendant's motion with respect to their state law claims of unconscionability, breach of contract, breach of implied contract, unjust enrichment, and breach of the duty of good faith and fair dealing.[11]  However, Lieberman dealt with claims brought pursuant to Connecticut law and does not serve as precedent in the instant action.  Plaintiffs fail to cite any cases applying New York law in support of these state law claims.  Nonetheless, the

---

[10]Emery v. Fishmarket Inn of Granite Springs, Inc., 173 A.D.2d 765 (2d Dep't 1991), was a foreclosure action, and the defaulting parties were a corporation and its principal.  Citibank v. Nyland, 878 F.2d 620 (2d Cir. 1989), was an action to foreclose a second mortgage on a leasehold interest in commercial real estate, the loan amount was over $39 million, and the defaulting party was a corporate entity.  In re Vest Associates, 217 B.R. 696, 701 (S.D.N.Y. 1998), was a bankruptcy case, and the defaulting debtor was a limited partnership.

[11]Plaintiffs do not address the usury claim in their memorandum of law in opposition, and in fact, the court in Lieberman, addressing the Connecticut usury statute, dismissed the usury claim asserted in that action.

Court has found cases applying New York law that have allowed claims of unconscionability to be brought to challenge a mortgage loan.  See, e.g., Ng v. HSBC Mortgage Corp., No. 07-CV-5434, 2010 WL 889256, at *19-20 (E.D.N.Y. Mar. 10, 2010); Williams v. Aries Financial, LLC, 09-CV-1816, 2009 U.S. Dist. LEXIS 107812, at *30-32 (E.D.N.Y. Nov. 18, 2009).

In the instant action, Plaintiffs allege, in their Complaint (¶¶ 17-29, 35), that all of the loan documents were drafted by Defendant and were non-negotiable and that they "were not trained in and/or familiar with the intricacies of housing finance under federal or state laws." They allege that prior to closing, they had not been made aware of the Default Interest Rider. They allege that at the closing, where they were unrepresented by counsel, they proceeded to close on the loan because they desperately needed the money to repair their house and because Defendant assured them that they would be able to refinance to a more affordable loan in the near future.  Moreover, with respect to the Default Interest Rider and the default interest rate, Plaintiffs allege that Defendant was aware that, were the loan to be accelerated and the interest rate increased, Plaintiffs would not be able to pay off their unpaid obligations, and their house would end up in foreclosure.  Not only are these allegations sufficient to state a claim of unconscionability with respect to the Default Interest Rider, but because a determination of unconscionability requires a fact-specific inquiry, it cannot be decided on a Rule 12(b)(6) motion addressed to the sufficiency of the pleadings.  See Ng v. HSBC Mortgage Corp., No. 07-CV-5434, 2010 WL 889256, at *19 (E.D.N.Y. Mar. 10, 2010) ("Multiple courts have noted that assessing an unconscionability argument is a fact-specific exercise that demands consideration of a wealth of circumstances. . . . A more complete factual record would be helpful, and dismissing the unconscionability argument at this stage may be overly hasty.") (citations omitted).

Therefore, I conclude, and respectfully recommend that Your Honor should conclude, that Defendant's motion to dismiss Plaintiffs' claim of unconscionability with respect to the Default Interest Rider should be DENIED.

Because the issue of unconscionability and thus, the enforceability, of the Default Interest Rider cannot be resolved on this motion to dismiss – and Defendant asserts no other basis for dismissal of Plaintiffs' state law claims for breach of contract, breach of implied contract, and breach of the duty of good faith and fair dealing, which are all based on the fundamental allegation that the default interest rate is unconscionable – I conclude, and respectfully recommend that Your Honor should conclude, that Defendant's motion to dismiss Plaintiffs' claims for breach of contract, breach of implied contract, and breach of the duty of good faith and fair dealing should be DENIED as well.

However, Plaintiffs' claim for unjust enrichment either is premature or fails to state a claim. "Under New York law, for a plaintiff to prevail on a claim of unjust enrichment, he [or she] must establish (1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's expense; and (3) that the circumstances are such that in equity and good conscience the defendant should return the money or property to the plaintiff." Golden Pacific Bancorp v. F.D.I.C., 273 F.3d 509, 519 (2d Cir. 2001). "The essence of such a claim is that one party has received money or a benefit at the expense of another." Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000) (internal quotation marks and citation omitted). In this case, Plaintiffs allege only that they "*stand to pay* thousands of dollars for interest and/or late penalties," Compl. ¶ 71 (emphasis added), not that they have paid such money to Defendant. Thus, Defendant has not yet been enriched at Plaintiffs' expense. Therefore, I conclude, and respectfully recommend that

Your Honor should conclude, that as alleged, Plaintiffs' unjust enrichment claim should be DISMISSED without prejudice.

Moreover, with respect to Plaintiffs' state law claim of usury as to the default interest rate, "[t]he usury laws do not apply to defaulted obligations." Manfra, Tordella & Brookes, Inc. v. Bunge, 794 F.2d 61, 63 n.3 (2d Cir. 1986) (citing cases).  Therefore, I conclude, and respectfully recommend that Your Honor should conclude, that Defendant's motion to dismiss Plaintiffs' usury claim should be GRANTED.

 2. **Deceptive Acts and Practices under N.Y. Gen. Bus. Law § 349 (Eighth Cause of Action)**

Section 349 of New York's General Business Law makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service," and provides for a private right of action to be brought by "any person who has been injured by reason of any violation of this section." N.Y. Gen. Bus. Law §§ 349(a),(h).  To state a claim under Section 349, "a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000) (citation omitted). Defendant argues that Plaintiffs' claim under Section 349 should be dismissed because the deceptive acts and practices alleged are not "consumer oriented." Consumer oriented conduct "need not be repetitive or recurring but defendant's acts or practices must have a broad impact on consumers at large; private contract disputes unique to the parties . . . would not fall within the ambit of the statute." New York Univ. v. Cont'l Ins. Co., 87 N.Y.2d 308, 320 (N.Y. 1995) (internal quotation marks and citations omitted).  Defendant claims that this litigation involves a

"private contract" and a "single shot transaction."

Plaintiffs allege a number of misrepresentations and deceptive practices, including not only the failure to provide the disclosures required by federal law, but also misrepresenting the nature of the transaction in order to induce to them to enter into it. See Compl. ¶ 80. While Plaintiffs provide little detail as to how Defendant's conduct is "consumer oriented," and "a mortgage transaction is not an orthodox or classic example of a claim brought under [Section 349]," it cannot be said as a matter of law that "an individual loan transaction cannot be harmful to the public interest generally and therefore cannot be sufficiently 'consumer-oriented' to comply with the statute." Ng v. HSBC Mortgage Corp., supra, 2010 WL 889256, at *15. "Indeed, the mortgage transaction herein was likely not unique to the parties, nor [was it] private in nature or a single shot transaction. On the contrary, if the allegations are true, such practice could easily recur and could potentially impact similarly situated consumers and therefore be considered consumer-oriented and harmful to the public at large." Id. (internal quotation marks and citations omitted).

Defendant further contends that Plaintiffs' claim under Section 349 should be dismissed because the acts alleged were not materially deceptive. Deceptive acts are those that are "likely to mislead a reasonable consumer acting reasonably under the circumstances." Maurizio, 230 F.3d at 521 (internal quotation marks and citations omitted). While Defendant argues that "Plaintiffs could not have been misled in this transaction if they read the documents they executed," Memorandum of Law in Support at 15, Plaintiffs allege that due to Defendant's deceptive acts and practices, they were induced into signing those documents and did not understand what they were signing. Moreover, they allege that Defendant's deceptive acts

included offering them a loan without considering their ability (or in this case, their inability) to pay.  At this stage of the litigation, it cannot be determined, as a matter of law, that Defendant's conduct falls outside the ambit of the statute.

Therefore, I conclude, and respectfully recommend that Your Honor should conclude, that Defendant's motion to dismiss Plaintiffs' claim under N.Y. Gen. Bus. Law § 349 should be DENIED.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that Your Honor should grant in part and deny in part Defendant's motion to dismiss (Docket # 4) as set forth herein.[12]

## NOTICE

Pursuant to 28 U.S.C. §636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d), or a total of seventeen (17) working days, see Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation.  Such objections, if any, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of The Honorable Stephen C. Robinson at the United States Courthouse, 300 Quarropas Street, White Plains, New York 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

---

[12]As Defendant did not address in its motion papers Plaintiffs' tenth cause of action, which seeks an injunction to expunge negative credit reports, I did not address it herein.

Requests for extensions of time to file objections must be made to Judge Robinson and should not be made to the undersigned.

Dated: April 22 2010
      White Plains, New York

Respectfully submitted,

Lisa Margaret Smith
United States Magistrate Judge
Southern District of New York

19